# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| FROSTINE NEWBERRY and RICHARD NEWBERRY, § § § § *Plaintiffs*, § § v. § § ROSA LOPEZ, d/b/a A & R RENT-A-FENCE § § § *Defendant*. § § § | Civil Action No. 4:19-cv-147 Judge Mazzant |

## FINAL JURY CHARGE

MEMBERS OF THE JURY:

You have heard all the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. Do not consider any statement that I have made in the course of the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. In answering the questions, answer "Yes" or "No" unless you are otherwise instructed by the verdict form. You will take this form to the jury room and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

In determining whether any fact has been proven in the case, you may, except when I have specifically instructed otherwise, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## I. General Instructions

*Considering Witness Testimony*

An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should decide whether you believe all or any part of what each person had to say, and how important that testimony was.

In making that decision, I suggest that you ask yourself a few questions: Did the person impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness have any relationship with either Plaintiff or Defendant? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he or she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? These are a few of the considerations that will help you determine the accuracy of what each witness said.

You, the jurors, are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness' testimony. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the wording of it or speculate as

to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory—the significance of a misstatement may depend on whether it has to do with an important fact or with only an unimportant detail.

*Consideration of the Evidence*

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. Unless you are instructed otherwise, the testimony of a

single witness may be sufficient to prove any fact, even if more witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all the evidence, whether direct or circumstantial.

The parties have stipulated, or agreed, to some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

In deciding the facts of this case, you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

*Demonstrative Evidence*

Exhibit [specify] is an illustration. It is a party's [description/picture/model] used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

*Use of Notes Taken by Jury*

Any notes that you have taken during this trial are only aids to your memory. If your

memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

*Expert Witnesses*

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

*Deposition Testimony*

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read to you during the trial. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

*Charts and Summaries*

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence.

These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

*Impeachment by Witness's Inconsistent Statement*

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

*Discontinuance as to Some Parties*

Certain parties are no longer involved in this trial. As jurors, it is your duty to consider the issues among the remaining parties.

*No Inference from Filing Suit*

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

*Instruction Regarding Juror Questions*

As I told you in my preliminary instructions, I have given you the opportunity to give me written questions anonymously after a witness testified when you had an important question of the witness that was strictly limited to the substance of the witness' testimony. Remember that I

asked you not to be offended if I did not present your question to be answered by the witness. You should not speculate on the answer to any unasked question and you should not speculate on or consider any facts or events outside the testimony and exhibits you have heard and seen in this courtroom.

*Judicial Notice*

You must accept as proved facts of which the Court takes judicial notice.  The Court has taken judicial notice of the City of Plano's Code of Ordinances, Chapter 19 §19-1: Obstruction of Streets, Alleys, Sidewalks, Parkway Areas or Public.

This Ordinance addresses the municipal law with regards to placing fences on public sidewalks in the City of Plano, Texas.  Specifically, the Ordinance states in relevant part that:

> (a) "It shall be unlawful for any person to obstruct or encumber any portion of any public street, alley, sidewalk, parkway area, or public property in the city with any item, including but not limited to, lumber, boxes, firewood, posts, fences, and vehicles. If this conduct is also an offense under the Texas Penal Code, the violation must be prosecuted under state law."

**II. Definitions**

- "**Frostine Newberry**" shall mean Frostine Newberry, a plaintiff in this case.
- "**Richard Newberry**" shall mean Richard Newberry, a plaintiff in this case.
- "**A&R Rent-A-Fence**" shall mean Rosa Lopez d/b/a A & R Rent-A-Fence, a defendant in this case.
- "**Discount Waste, Inc., a Corporation**" shall mean Discount Waste, an equipment broker for the project.

- "**Fred Olivieri Construction Company**" shall mean Fred Olivieri, the general contractor for the project.
- "**The Construction Premises**" shall mean the area subject to the Tommy Bahama Construction, including the fence and any protrusions from the fence.

### III. The Nature of the Action, the Parties, and the Contentions

*Statement of the Case*

I will now provide an overview of the case to you. The claim in this case is for premises liability. Plaintiff Frostine Newberry seeks damages for injuries sustained when she tripped and fell over the protruding metal bars holding up a construction barricade on the pedestrian sidewalk at the Legacy West Shopping Center at 7501 Windrose Avenue, Plano, Texas 75024 ("Legacy West Shopping Center"). As a result of this fall, Plaintiff alleges that she suffered significant bodily injury, specifically to her wrist, which necessitated surgery.

Plaintiff Frostine Newberry alleges Defendant engaged in several types of wrongful conduct in this matter. First, Plaintiff Frostine Newberry alleges Defendant had control over the fence it installed on the construction premises where she tripped and fell. Second, Plaintiff Frostine Newberry alleges the fence posed an unreasonable risk of harm that was created by Defendant when it installed the fence. Third, Plaintiff Frostine Newberry alleges Defendant had a resultant duty to remove or mitigate the unreasonable risk of harm created by the fence it installed on the construction premises.

Fourth, Plaintiff Frostine Newberry alleges Defendant breached its duties by failing to remove or mitigate the risk to Plaintiff by warning her of the unreasonable risk of harm created by the fence on the construction premises. Fifth, Plaintiff Frostine Newberry alleges Defendant's breach of these duties was the proximate cause of the injuries she sustained. Further

alleging that, but for the Defendant's breach of these duties, the accident that resulted in the injury Plaintiff suffered would not have happened.

Plaintiff Richard Newberry also seeks compensation for past and future loss of consortium and services due to the injuries suffered by his wife, Frostine Newberry. Plaintiff Richard Newberry alleges he suffered loss of consortium and loss of services as a direct consequence of the injuries sustained by his wife when she tripped and fell over the protruding metal bars holding up a construction barricade on the pedestrian sidewalk installed by Defendant. These losses, Defendant Richard Newberry alleges, include the loss of love, affection, solace, comfort, companionship, society, assistance, emotional support and household services from his wife.

Defendant denies Plaintiff's Frostine Newberry allegations and contends that it is not liable to Plaintiff Frostine Newberry under a premises liability action because it did not own, occupy, or control the premises where the subject incident occurred.

Defendant further contends that it is not liable to Plaintiff Frostine Newberry under a premises liability action because it did not create the alleged unreasonable risk of harm as alleged by Plaintiff. Specifically, Defendant contends that the fencing, which was not installed on a sidewalk by A & R, was regularly moved, modified, altered, controlled, and possessed by others after Defendant originally installed the fencing at the direction of the general contractor Fred Olivieri Construction Company ("Olivieri"). Defendant contends that Olivieri exercised control and possession over the fence after it was installed by Defendant and was responsible for placing the fence in the condition it was in at the time of the subject incident.

Additionally, Defendant contends that it is not liable to Plaintiff Frostine Newberry under a premises liability action because it did not have constructive or actual knowledge of the alleged

dangerous condition. Further, Defendant contends that the alleged dangerous condition created by the fencing did not exist long enough to give Defendant the reasonable opportunity to discover it and remedy it.

Moreover, Defendant contends it is not liable to Plaintiffs because the dangerous condition as alleged by Plaintiff Frostine Newberry was open and obvious and Plaintiff Frostine Newberry was the sole proximate cause, or contributing cause, of her alleged injuries and damages. Additionally, Defendant contends that Plaintiff Frostine Newberry's alleged injuries and damages are the result of causes that are unrelated to any alleged conduct of Defendant.

Further, Defendant contends that, to the extent the incident made the basis of this lawsuit is found to have caused pain or injuries to Plaintiff Frostine Newberry, Plaintiff Frostine Newberry's alleged pain and injuries, in whole or in part, would be the aggravation of Plaintiff Frostine Newberry's preexisting injuries and medical conditions.

Furthermore, Defendant contends that any claims for medical or health care expenses incurred are limited to the amount actually paid or incurred by or on behalf of Plaintiff. Moreover, Defendant contends that the damages, if any, recoverable by Plaintiff must be reduced by any amount of damages legally caused by the Plaintiff's failure to mitigate such damages in whole or in part.

Additionally, Defendant contends that, because it is not liable to Plaintiff Frostine Newberry under a premises liability action, it is also not liable to Plaintiff Richard Newberry for loss of consortium and services.

*Stipulated Facts*

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

The parties have agreed and stipulated to several facts. The parties stipulate that:

1. Plaintiff Frostine Newberry is an individual who resides in Lexington, IL;

2. Plaintiff Richard Newberry is married to Plaintiff Frostine Newberry and also resides in Lexington, IL;

3. Defendant is a sole proprietorship with a main location in 294 Highway 175, Seagoville, TX 75159 and another location at 8008 Rosemont Road, Dallas, TX 75217;

4. On or about March 23, 2017, Defendant was contacted by Discount Waste, Inc. ("Discount Waste") with regard to leasing and installing a temporary chain-link fence around the ongoing construction at a Tommy Bahama retail store and restaurant located at Legacy West Shopping Center, 7501 Windrose Ave., Plano, Texas 75024 (hereinafter "Tommy Bahama");

5. The general contractor for the construction of the Tommy Bahama was Olivieri.

6. Olivieri had originally requested that Discount Waste secure a temporary fence on its behalf for the Tommy Bahama construction.

7. In turn, Discount Waste, on behalf of Olivieri, secured a temporary fencing from Defendant A&R

8. On or about March 24, 2017, Defendant A&R installed a temporary fence at the Tommy Bahama;

9. On July 14, 2017, Plaintiff Frostine Newberry was at Legacy West Shopping Center with her daughter, son-in-law and then two-year-old grandson;

10. Plaintiff Frostine Newberry was walking on a sidewalk next to the construction premises of the Tommy Bahama store at Legacy West Shopping Center alongside her daughter, son-in-law and then two-year-old grandson;

11. There existed protruding metal bars holding up construction barricades at the pedestrian sidewalk where Plaintiff Frostine Newberry was walking;

12. Plaintiff Frostine Newberry was taken to a hospital facility in Allen, Texas by her daughter Suzanne Smith; and

13. Plaintiff Frostine Newberry underwent surgery for her right wrist at Texas Health Presbyterian Hospital in Allen, Texas.

*Burden of Proof*

You must answer all questions based upon a **"preponderance of the evidence."** This means questions presented to you must have a greater weight and degree of credible evidence supporting them in order for them to be proven. In other words, a preponderance of the evidence means the amount of evidence for a fact, when compared with evidence opposed to it, must have more convincing force, and produce in your minds a belief that the fact is more likely true than not true.

In determining whether any fact has been proven by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

### IV. Theory of Recovery

**a.  Plaintiff Frostine Newberry's Claim – Premises Liability**

Plaintiff Frostine Newberry alleges a premises liability claim against Defendant. Defendant owed Plaintiff, its invitee, a duty to exercise reasonable care to protect her from dangerous conditions that were known or reasonably discoverable, but it was not an insurer of her safety.  In order to establish this claim, Plaintiff Frostine Newberry must show by a preponderance of the evidence that:

**First**: A condition existed on the construction premises that created an unreasonable risk of harm;

**Second**: The Defendant either owned, possessed, or exercised control over the construction premises or created a dangerous condition on the construction premises;

**Third**: The Defendant knew, or reasonably should have known, of the existence of that condition;

**Fourth**: The Defendant failed to use ordinary care to reduce or eliminate the risk by rectifying or warning of the condition; AND

**Fifth**: Such failure was a proximate cause of the incident and of Plaintiff's injuries.

You should use the following definitions in your deliberations on this claim:

- "**Ordinary Care**" means that degree of care that would be used by a premises owner or occupier of ordinary prudence under the same or similar circumstances.

- "**Proximate Cause**" means a cause that was a substantial factor in bringing about the occurrence or injury, and without which cause such occurrence or injury would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the occurrence or injury,

13

or some similar occurrence or injury, might reasonably result therefrom. There may be more than one proximate cause of an occurrence or injury.

**b.  Defendant's Claim – Negligence**

Defendant denies Plaintiff Frostine Newberry's claim and contends that Plaintiff's own negligence proximately caused the occurrence in question. Defendant has the burden to prove by a preponderance of the evidence that Plaintiff was negligent and that her negligence was a proximate cause of the occurrence.

You should use the following definitions in your deliberations on this claim:

- **"Negligence"** means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

- **"Ordinary Care"** means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

- You should also use the definition of **"Proximate Cause"** as previously given.

Finally, you are instructed that a consumer is not relieved of the responsibility to act reasonably nor may a consumer fail to take reasonable precautions.

**V.  Damages**

If Plaintiff has proven her claim against Defendant by a preponderance of the evidence, then you must determine whether Defendant has caused Plaintiff damages, and, if so, you must determine the amount, if any, of those damages. You should not interpret the fact that I have given instructions about Plaintiff's damages as an indication in any way that I believe that Plaintiff should, or should not, win this case. It is your task first to decide whether Defendant is

liable. I am instructing you on damages only so that you will have guidance in the event you decide that Defendant is liable and that Plaintiff is entitled to recover money from Defendant.

Plaintiff must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. On the other hand, Plaintiff need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

If you find that Defendant is liable to Plaintiff, then you must determine an amount that is fair compensation for all of Plaintiff's damages. These damages are called compensatory damages. There is no exact standard for determining compensatory damages. The purpose of compensatory damages is to make Plaintiff whole—that is, to compensate Plaintiff for the damage that Plaintiff has suffered as a result of Defendant's conduct. Compensatory damages are not limited to expenses that Plaintiff may have incurred because of her injury.

In assessing compensatory damages, you may include an amount for pain, suffering, and emotional distress that you determine to be reasonable compensation in the light of all the evidence in this case. Compensatory damages consist of any non-pecuniary loss such as emotional pain, suffering, inconvenience, mental anguish, and/or loss of enjoyment of life that were proximately caused as a result of the violations that you have found, if any.

You may award compensatory damages only for injuries that Plaintiff has proven were proximately caused by Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of Plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize Defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which Plaintiff has actually suffered or that Plaintiff is reasonably likely to suffer

in the future.  Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.  You must not award compensatory damages more than once for the same injury. Plaintiff is only entitled to be made whole once and may not recover more than she has lost.

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

You may consider the following elements of damages, to the extent you find them proved by a preponderance of the evidence: (1) past and future physical pain and suffering; (2) past and future mental anguish; (3) past and future disfigurement; and (4) past medical expenses.

**Physical Pain and Suffering and Mental Anguish Damages**

You may award damages for any pain and suffering and mental anguish that Plaintiff experienced in the past or will experience in the future as a result of the injury caused by Defendant.  No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced.  You are not trying to determine value, but an amount that will fairly compensate Plaintiff for the damages she has suffered.  There is no exact standard

for fixing the compensation to be awarded for these elements of damage. Any award that you make must be fair in the light of the evidence.

"Mental anguish" is a relatively high degree of mental pain and distress. It means the conscious emotional pain, torment and suffering experienced by Plaintiff, if any. This term means something more than simply mere disappointment, anger, resentment, embarrassment, frustration, or hurt feelings, although it may include all of these.

Physical pain refers to physical sensations when injury has occurred to the body.

**Disfigurement**

Disfigurement is that which impairs the beauty, symmetry, or appearance of a person or thing or that which renders a person unsightly or imperfect in some manner. In short, it is simply a change in one's appearance caused by another, without permission.

**Medical Expenses**

Medical expenses are the reasonable expenses, if any, of the necessary medical and hospital care received by Plaintiff for treatment of injuries sustained as a result of the occurrence in question.

**Mitigation of Damages**

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate her damages, that is, to avoid or to minimize those damages.

If you find Defendant is liable and Plaintiff has suffered damages, Plaintiff may not recover for any item of damage that she could have avoided through reasonable effort. If you find that Defendant has proved by a preponderance of the evidence that Plaintiff unreasonably

17

failed to take advantage of an opportunity to lessen her damages, you should deny her recovery for those damages that she would have avoided had she taken advantage of the opportunity.

You are the sole judge of whether Plaintiff acted reasonably in avoiding or minimizing her damages. An injured Plaintiff may not sit idly by when presented with an opportunity to reduce her damages. However, she is not required to make unreasonable efforts or to incur unreasonable expenses in mitigating damages. Defendant has the burden of proving the damages that Plaintiff could have mitigated. In deciding whether to reduce Plaintiff's damages because of her failure to mitigate, you must weigh all the evidence in light of the circumstances of the case. You must use sound discretion in deciding whether Defendant has satisfied her burden of proving that Plaintiff's conduct was not reasonable.

**Loss of Consortium and Household Services**

As you are aware, Plaintiff Richard Newberry alleges he suffered a loss of consortium and household services based on the injuries his wife allegedly suffered. A spouse has a cause of action for loss of consortium as a result of physical injuries caused to the other spouse by the negligence of a third party. "Loss of consortium" consists of harm to the emotional or intangible elements of a marital relationship, including, but not limited to: loss of services, loss of love, loss of companionship, loss of affection, loss of intimate relations, loss of comfort, loss of society, and/or loss of solace

In addition, a spouse has a cause of action for loss of services of the other spouse as a result of physical injuries caused to the other spouse by the negligence of a third party. "Household services" means the performance of household and domestic duties by a spouse to the marriage.

## VI. Duty to Deliberate

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial.  Any notes that you have taken during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must first select a Jury Foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your Jury Foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the Jury Foreperson should write the inquiry and give it to the Court Security Officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in

mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

**SIGNED this 10th day of June, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE